IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION



JOHN MILTON PHILLIPS, JR.,
    Petitioner,

vs.                                                   Case No. 3:08cv193/LAC/EMT

WALTER A. McNEIL,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

        Now pending is Respondent's motion to dismiss (Doc. 20) the instant amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 13). Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d). Petitioner has responded in opposition to the motion (Doc. 22).

        This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

        The procedural background of this case is established by the state court record (Doc. 20, Exhibits). On April 16, 2002, Petitioner entered a plea of nolo contendere in Walton County case numbers 02CF000118 and 02CF000185 to three counts of sexual battery, two counts of burglary of a dwelling with assault or battery, two counts of home invasion robbery, and three counts of kidnapping without a weapon (Doc. 20, Ex. A). He was adjudicated guilty in both cases (*id.*). In case number 02CF000118, Petitioner was sentenced as a sexual predator and a sexual offender to concurrent terms of life imprisonment on one of the sexual battery counts and the home invasion robbery count, and concurrent terms of thirty (30) years of imprisonment on the second sexual battery count, the burglary count, and the kidnapping count in that case, to run concurrently with the life sentences (*id.*). In case number 02CF000185, Petitioner was sentenced as a sexual predator and a sexual offender to concurrent terms of life imprisonment on the burglary count and the kidnapping

counts, and concurrent terms of thirty (30) years of imprisonment on the home invasion robbery count and the sexual battery count, to run concurrently with the life sentences (*id.*). Also that day, Petitioner entered a plea of nolo contendere in Okaloosa County case number 02-606-CFA to one count of sexual battery with a firearm, one count of burglary of a dwelling with assault or battery, one count of home invasion robbery, and one count of armed kidnapping with a firearm (Doc. 20, Ex. B). He was adjudicated guilty and sentenced to concurrent terms of life imprisonment on the sexual battery and armed kidnapping counts, with a ten-year mandatory minimum, and concurrent terms of thirty (30) years of imprisonment on the burglary and robbery counts, to run concurrently with the life sentences (*id.*). The sentences in the Okaloosa County case were ordered to run consecutive to the sentences in the Walton County cases (*id.*). Petitioner did not appeal the judgments.

On December 26, 2003, Petitioner filed an unsigned motion for postconviction relief in the Walton County Circuit Court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (*see* Doc. 20, Ex. C). On December 31, 2003, the trial court denied the motion as facially insufficient because it did not contain Petitioner's signed oath (Doc. 20, Ex. D). The court denied the motion without prejudice to Petitioner's filing a sufficient amended motion within sixty (60) days (*id.*). Petitioner filed an amended motion on January 21, 2004 (Doc. 20, Ex. E). Following an evidentiary hearing, the trial court issued an order denying Petitioner's Rule 3.850 motion (*see* Doc. 22 at 3). Petitioner appealed the decision to the Florida First District Court of Appeal (First DCA), and the appellate court affirmed per curiam without written opinion on February 22, 2006, with the mandate issuing April 26, 2006 (*see id.*). Phillips v. State, 925 So. 2d 316 (Fla. 1st DCA Feb. 22, 2006) (Table).

On July 3, 2006, Petitioner filed a second Rule 3.850 motion (*see* Doc. 22 at 3). On October 27, 2006, the trial court denied the motion (*id.*). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on June 20, 2007, with the mandate issuing September 6, 2007 (*see id.* at 3–4). Phillips v. State, 962 So. 2d 907 (Fla. 1st DCA June 20, 2007) (Table).

Petitioner filed the instant federal habeas petition on May 6, 2008 (Doc. 1 at 15). He asserts the following grounds for relief:

    Ground 1: Trial counsel failed to request a competency hearing when the Petitioner's behavior established the need for a competency evaluation.

    Ground 2: Counsel failed to motion the court for recusal based on judicial bias because the Judge knew one of the victims who was the late Chief Judge Anderson's widow.

> Ground 3: Petitioner was denied his constitutional right to due process of law based on the trial counsel's failure to disclose crucial pre-trial discussions.
>
> Ground 4: Petitioner contends that he was denied his Sixth Amendment right to effective assistance of counsel based on the fact that counsel failed to raise a viable defense.
>
> Ground 5: Petitioner was denied his Constitutional right to due process of law based on the fact that the trial court lacked jurisdiction to accept the plea.
>
> Ground 6: Petitioner was denied his Constitutional right to due process of law when the trial court failed to accept the plea in accordance with established State law.

(Doc. 13 at 5–12).

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

In Petitioner's response to the motion to dismiss, he contends that a government-created impediment to filing his federal petition existed, that is, the Union Correctional Institution Law Librarian's recommendation and assignment of Inmate Marion Russell as Petitioner's inmate law clerk to assist Petitioner with pursuing his post-conviction remedies (Doc. 22 at 4–19).  Petitioner states Inmate Russell held himself out as an attorney, even though Petitioner learned in December of 2006 that he was not (*id.* at 5).  Petitioner contends the state-created impediment to his federal filing began on February 15, 2003, when the law librarian assigned Inmate Russell as Petitioner's inmate law clerk (*id.* at 2).  He states he and Russell first met regarding his post-conviction remedies on March 2, 2003, and they calculated his federal habeas deadline as May 16, 2003 (*see id.* at 2, 10,

15–16). Petitioner states Russell agreed to file a Rule 3.850 motion which included federal claims, as well as a "place holder" federal petition to toll the federal limitations period (*id.* at 15–17). Petitioner states that the assignment of Inmate Russell to assist him effectively prohibited him from directly accessing books and legal materials (*id.* at 6, 8–9). Petitioner states he was transferred to another institution on May 5, 2003, with only eleven (11) days remaining on the "federal clock" (*id.* at 10). Petitioner states Inmate Russell delayed until December 25, 2003, to file Petitioner's first Rule 3.850 motion and then included three ineffective assistance of counsel claims without including claims that Petitioner's use of Prozac and cocaine induced his violent behavior (*id.* at 3, 10, 17). Additionally, although Russell included federal claims in the Rule 3.850 motion, he abandoned the filing of a "place holder" section 2254 petition without Petitioner's knowledge (*id.* at 16). Petitioner states the law librarian at his new institution refused to assign him an inmate law clerk because Petitioner was represented by "counsel," and he was not permitted to communicate directly with Inmate Russell; however, prison officials arranged for all of Petitioner's files and motions to be forwarded in the institutional mail, and Petitioner communicated with Russell indirectly through Petitioner's wife (*id.* at 11, 16). Petitioner states that upon learning on December 29, 2006, that he had been "defrauded" by Russell, he filed a complaint against Russell with The Florida Bar on January 10, 2007 (*id.* at 10). On February 7, 2008, the Bar determined that Inmate Russell engaged in the unlicensed practice of law by "holding himself out as an attorney or as someone capable of providing legal services, inducing another to rely on him for legal services, providing personal legal counsel and services, and collecting a fee for legal services" (*id.* at 9).

Petitioner contends the State created an impediment to his federal filing by assigning Inmate Russell as Petitioner's inmate law clerk on February 15, 2003, and this impediment was not removed until February 7, 2008, when The Florida Bar informed Petitioner that Inmate Russell had engaged in the unlicensed practice of law (Doc. 22 at 13). To show an impediment which would trigger the later commencement date for the one-year period, Petitioner must demonstrate both actual harm or injury, that is, that he was actually prevented from exercising his right of access to courts to attack his sentence or conditions of confinement, and that the impediment was unconstitutional because not "reasonably related to legitimate penological interests." *Id.* at 1090 (quoting Lewis v. Casey, 518 U.S. 343, 361, 116 S. Ct. 2174, 135 L. Ed.2 d 606 (1996)) (other citations omitted).

To the extent Petitioner asserts that the State impeded him from timely filing by providing an incompetent legal advisor to assist him with post-conviction remedies, this is not the type of State impediment envisioned in § 2244(d)(1)(B). *See* Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005) (habeas petitioner's assertion that the State impeded him from timely filing his federal petition by providing an incompetent attorney to assist him is meritless, as this is not the type of State

impediment envisioned in § 2244(d)(1)(B)). Furthermore, to the extent Petitioner asserts he was prohibited from accessing legal research materials due to the assignment of Inmate Russell to his case (*see* Doc. 14 at 8; Doc. 22 at 6, 8–9), he does not allege any facts showing that he actually requested access to research materials or that he was denied such access. Petitioner states, "Because of Marion Russell's position as an attorney handling Petitioner's case, Petitioner could not use the law library, per Barry Rhodes, FDOC Research and Training Specialist. *See Harvard Civil Rights – Civil Liberties Law Review*. Vol. 41, 2006 pp. 332" (Doc. 14 at 8), and Petitioner repeats this assertion in his reply brief (Doc. 22 at 6, 8–9). Petitioner mischaracterizes Mr. Rhodes' statement of DOC policy as described in Inmate Thomas C. O'Bryant's law review article. Inmate O'Bryant was discussing his view that Florida inmates are not allowed to receive guidance from inmate law clerks regarding post-conviction remedies while being represented by counsel on direct appeal of their convictions. Thomas C. O'Bryant, *The Great Unobtainable Writ: Indigent Pro Se Litigation After the Antiterrorism and Effective Death Penalty Act of 1996*, 41 Harv. C.R.-C.L. L. Rev. 299, 331–32 (2006). Inmate O'Bryant stated:

> This position of the F.D.O.C. is demonstrated by an e-mail communication between two F.D.O.C. officials, Susan Hughes and Barry Rhodes.[FN192] On December 11, 2001, Ms. Hughes e-mailed Mr. Rhodes about a research aide who had requested permission to send a "status report" to an inmate's attorney. The inmate, who was illiterate, was represented by the attorney on direct appeal, but had been working with the aide on a postconviction motion while the direct appeal was pending. Mr. Rhodes responded as follows:
>
>> If the inmate has an attorney representing him/her on a case we are not to be involved what-so-ever in the research-assistance-advice cycle . . . .
>> EXCEPTION Some inmates will tell us they are actually writing the court document to file "pro se" and want to send the document to a lawyer just to review . . . . We can instruct the inmate to obtain a letter from the lawyer stating that the inmate is acting on his own and filing pro se . . . . Then the research aide can help the inmate . . . .
>> However, when an inmate is represented by an attorney we must continue to: retrieve research materials from the shelf for the prisoner; provide appropriate and required forms; and provide supplies such as paper, pen, and envelopes per the rule . . . .
>> If the lawyer is the prisoner's attorney of record-so be it. In that case instruct the aide to stop assisting the prisoner.[FN193]
>
> As demonstrated by the foregoing communication, a prospective pro se prisoner is unable to obtain assistance from prison law clerks to begin preparing for eventual post-conviction proceedings while he has an attorney pursuing direct appeal issues on his behalf. Once the direct appeal process is complete, and AEDPA's one-year time period has begun, a prisoner may use prison law clerks and any guidance they may provide.

*Id.* at 332. Even if prison officials deemed Inmate Russell as Petitioner's attorney, the full context of the DOC policy shows that Petitioner was still able to access research materials, forms, and legal supplies. Therefore, Petitioner has failed to show that the State prevented him from accessing legal materials necessary to file a timely federal petition. *Cf.* Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000) ("The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment.").[1]

Additionally, to the extent Petitioner contends the State created an impediment to his federal filing by transferring him to another institution on May 5, 2003, and refusing to allow Petitioner to communicate directly with Inmate Russell after the transfer, Petitioner's contention is without merit. Petitioner acknowledges that upon his transfer on May 5, 2003, prison officials forwarded all of his legal materials to him through the institutional mail (*see* Doc. 22 at 16–17). Although Petitioner states that his legal materials did not reach him until after May 16, 2003, the federal deadline, he does not suggest that he informed prison officials that he needed the materials more quickly to meet his federal deadline, or that he would have filed his federal petition on his own if he had possession of his legal materials sooner. Regarding communication with Inmate Russell, Petitioner concedes that he was able to communicate with Inmate Russell through his (Petitioner's) wife, and this is evidenced by the copies of correspondence between Petitioner's wife and Inmate Russell submitted by Petitioner with his reply brief, in which Mrs. Phillips informed Inmate Russell on June 30, 2003, that Petitioner had been transferred, requested that Russell keep Petitioner's case, advised Russell that they were awaiting funds to pay him and would send payment so that he could proceed with Petitioner's case, advised Russell to contact her with any questions, and told him that if she did not know the answer, "it [the answer] is easy to get" because she had daily contact with Petitioner (Doc. 22 at 2, attachments). Therefore, Petitioner has failed to show that prison officials actually prevented him from accessing legal resources to assist him with his post-conviction remedies. Additionally, Petitioner has failed to show a causal connection between the conduct of prison officials and the late filing of his federal petition. Petitioner does not allege he was aware of his federal deadline or attempted to make himself aware of it until February 15, 2003, after nine (9) months of the twelve-month federal limitations period had already expired. On that date, and upon Petitioner's request, the State assigned him Inmate Russell, an inmate law clerk, to assist in pursuing post-conviction remedies, and Petitioner had access to Mr. Russell's assistance even after his transfer to a new institution. Therefore, Petitioner has failed to show that the late filing of his

---

[1] Akins involved the one-year time limit for filing a 28 U.S.C. § 2255 motion, which similarly provides for later possible commencement dates. *See* § 2255 ¶ 6, subsection (2) (commencing the time from the date a government created unconstitutional impediment to filing is removed, if the movant was prevented from making a motion by such governmental action).

Case No.: 3:08cv193/LAC/EMT

petition was actually caused by his transfer and prison officials' refusal to allow him direct communication with Inmate Russell.  Accordingly, the undersigned concludes that Petitioner has failed to demonstrate that a State-created impediment prevented him from filing a timely  federal petition.

Liberally construing Petitioner's amended petition and supporting memorandum of law, he appears to also claim that § 2244(d)(1)(D) is the appropriate statutory trigger for the federal limitations period because he did not learn of the factual basis for Ground Three asserted in his federal petition until the evidentiary hearing on his first Rule 3.850 motion on August 3, 2004 (Doc. 13 at 8; Doc. 14 at 31–32).  In Ground Three, Petitioner claims he received ineffective assistance of counsel because his counsel failed to inform him of the substance of his conversations with the prosecutor regarding a possible plea bargain.  Petitioner states he did not know that such conversations took place until the evidentiary hearing, and if he had known that such conversations occurred, he would not have entered an "open" plea and would have proceeded to trial (*id.*).  Petitioner has failed to show he made any effort, let alone diligent efforts, to discover whether his trial counsel had any conversations with the prosecutor regarding a plea bargain.  All that was required of Petitioner to discover this fact was a simple question to counsel at any point prior to his entry of his plea.  Therefore, Petitioner has failed to show that § 2244(d)(1)(D) is the appropriate statutory trigger for the federal limitations period.

This leaves § 2244(d)(1)(A), the date Petitioner's conviction became final, as the appropriate trigger for the federal limitations period.  It is now well established that when a Florida defendant does not directly appeal his conviction, the conviction becomes final thirty (30) days after rendition of the order of judgment of conviction and sentence.  *See* Fla. R. App. P. 9.110(b); Gust v. State, 535 So. 2d 642 (Fla. 1st DCA 1988) (if defendant does not appeal conviction or sentence, judgement of conviction and sentence become final when 30-day period for filing appeal expires).  In the instant case, the parties do not dispute that Petitioner's convictions became final on May 16, 2002, and he had one year from that date, or until May 16, 2003, to file his federal petition (*see* Doc. 20 at 2; Doc. 22 at 1).

Petitioner did not file his federal petition on or before May 16, 2003; however, he may be entitled to habeas review if the limitations period was tolled pursuant to statutory tolling principles.  Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that there were no post-conviction applications pending in the state courts from May 16, 2002 to May 16, 2003.  Petitioner filed his first motion for post-conviction

relief on December 26, 2003, however, the one-year limitations period had already expired seven months earlier on May 16, 2003. Because that motion and Petitioner's subsequent post-conviction applications were filed after the federal limitations period expired, they did not toll the limitations period. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000).

       Petitioner next contends he is entitled to equitable tolling of the limitations period due to the "egregious" misconduct of Mr. Russell, who held himself out as an attorney and assisted Petitioner in preparing and filing his first Rule 3.850 motion (*see* Doc. 22 at 5–9, 14–20). "Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264–65 (11th Cir. 2004) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) and Sandvik, *supra*). "The focus of the inquiry regarding 'extraordinary circumstances' is 'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (quoting Helton, 259 F.3d at 1314–15) (other citations omitted)). The burden of establishing entitlement to this extraordinary remedy rests with Petitioner. Wade, *supra*; Drew, *supra*.

       Petitioner contends that Inmate Russell's conduct exceeds mere negligence and rises to the level of "egregious misconduct" which the Eleventh Circuit has held may warrant equitable tolling (*see* Doc. 22 at 17–20) (citing Downs v. McNeil, 520 F.3d 1311 (11th Cir. 2008)). Petitioner describes the following conduct as "egregious misconduct" which warrants equitable tolling: (1) Inmate Russell misrepresented himself as an attorney and accepted payment for legal services even though he was not an attorney, (2) Inmate Russell was aware of Petitioner's federal deadline and assured Petitioner that he would file a Rule 3.850 motion as well as a "place holder" federal habeas petition by that deadline, but then disregarded Petitioner's instructions to do so and failed to file anything by the May 16, 2003 deadline, (3) Inmate Russell assured Petitioner that state and federal issues were being "handled," but he "abandoned" Petitioner's federal issues, and (4) Inmate Russell "gave false reassurances . . . about the status of the motions" to Petitioner and his wife (Doc. 22 at 6–7, 10–11, 13, 15–18).

It is well settled that attorney negligence is not a basis for equitable tolling. *See* Helton, 259 F.3d at 1313; Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000); Sandvik, 177 F.3d at 1271–72; *see also* Lawrence, 127 S.Ct. at 1085 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). However, as Petitioner points out, the Eleventh Circuit recently held that an attorney's egregious misconduct may entitle a habeas petitioner to equitable tolling of the limitations period. *See* Downs, 520 F.3d at 1319–25. In Downs, the petitioner alleged that the following circumstances entitled him to equitable tolling: (1) he made unequivocal, repeated demands that his attorneys file his federal habeas petition, (2) he closely tracked his attorneys' work and the applicable federal deadlines, and (3) his counsel was repeatedly unresponsive and overtly deceived him by representing they had filed a tolling petition in state court when they had not in fact done so. *Id.* at 1316, 1322. The Eleventh Circuit held that if these allegations were true, Downs was entitled to equitable tolling because (1) counsel's affirmative misrepresentation that a state tolling application had been filed, when it had not, constituted an extraordinary circumstance, (2) Downs acted with appropriate diligence by writing his attorneys three times during a five-month period to express concern over the running of the federal filing period and to urge the filing of a federal petition or state tolling application, and he either drafted a federal petition or a list of issues to be included in the petition, and (3) counsel's lie about having filed a state tolling application was not immediately discernable by Downs.[2] *Id.* at 1323–24. Therefore, the Eleventh Circuit vacated the district court's order dismissing Downs' federal petition as untimely and remanded for an evidentiary hearing to determine whether the facts alleged by Downs were true and, if true, what period of time should be equitably tolled. *Id.* at 1325. In holding that Downs sufficiently alleged extraordinary circumstances beyond his control, the Eleventh Circuit repeatedly and specifically noted counsel's affirmative misrepresentation as a critical factor. *Id.*

Subsequently, in Holland v. Florida, 539 F.3d 1334, 1339 (11th Cir. 2008), the Eleventh Circuit declined to extend Downs to a "pure-professional-negligence" case. The court noted that in the district court, Holland made no allegation of knowing or reckless factual misrepresentation or of lawyer dishonesty; instead, Holland's allegations were limited to his attorney's failure to communicate with him on the status of his case and the attorney's failure to file a federal habeas petition timely, despite repeated instructions to do so. *Id.* The Eleventh Circuit assumed that the

---

[2] In two recent unpublished decisions, the Eleventh Circuit reached similar conclusions. *See* Kicklighter v. United States, No. 07-14945, 2008 WL 2421728 (11th Cir. June 17, 2008) (unpublished); Hammond v. Frazier, 275 Fed. Appx. 896 (11th Cir. 2008) (unpublished). Both cases involved allegations of affirmative misrepresentations by counsel. Kicklighter, 2008 WL 2421728, at *1 (petitioner alleged that counsel "lied to him about whether the appeal had been filed"); Hammond v. Frazier, 2008 WL 1891478, at *1 (petitioner alleged that "post-conviction counsel falsely told him that counsel had filed the state habeas petition").

attorney's alleged conduct was negligent, even grossly negligent, but held that "in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part," the facts did not rise to the level of egregious attorney misconduct that would entitle Holland to equitable tolling.  *Id.*

In the instant case, Petitioner describes the following conduct as "egregious misconduct" which warrants equitable tolling:  (1) Inmate Russell misrepresented himself as an attorney and accepted payment for legal services even though he was not an attorney, (2) Inmate Russell was aware of Petitioner's federal deadline and assured Petitioner that he would file a Rule 3.850 motion as well as a "place holder" federal habeas petition by the May 16, 2003 deadline, but then disregarded Petitioner's instructions to do so and failed to file anything by that deadline, (3) Inmate Russell assured Petitioner that state and federal issues were being "handled," but he "abandoned" Petitioner's federal issues, and (4) Inmate Russell "gave false reassurances . . . about the status of the motions" to Petitioner and his wife (Doc. 22 at 6–7, 10–11, 13, 15–18).  Initially, Petitioner has failed to show that Inmate Russell's misrepresentation that he was an attorney instead of an inmate law clerk, had any causal effect on Petitioner's missing the federal deadline.  As previously discussed, even if prison officials believed that Inmate Russell was Petitioner's actual attorney, which is highly doubtful, Petitioner has failed to show that this prevented Petitioner from directly accessing necessary legal materials and forms.  Furthermore, although Petitioner states that Inmate Russell assured him that he would file a federal petition and a state tolling motion before May 16, 2003, and Russell falsely reassured Petitioner and his wife about "the status" of those pleadings, Petitioner does not allege that Inmate Russell affirmatively misrepresented that either pleading had been filed prior to that date.  Indeed, the correspondence between Inmate Russell and Petitioner's wife, submitted by Petitioner with his reply brief, belies any suggestion that Petitioner believed a state or federal petition was filed prior to May of 2003.  In correspondence dated June 30, 2003, Petitioner's wife told Inmate Russell that Petitioner had been transferred, that she and Petitioner wanted Russell to continue with Petitioner's case, that she and Petitioner "are waiting for the money to come in, at which time I will send it to you and you can proceed," and she relayed Petitioner's question about whether to include a specific federal issue in the pleadings (Doc. 22, attachment).  In the absence of any allegation that Inmate Russell affirmatively misrepresented that either a state or federal pleading had been filed prior to May 16, 2003, Petitioner has failed to show that his circumstances rise to the level of egregious misconduct that would entitle him to equitable tolling under Downs.

Additionally, to the extent Petitioner suggests that his transfer to another institution on May 5, 2003, entitles him to equitable tolling, his contention is unconvincing.  Petitioner does not allege

any facts suggesting that his transfer was extraordinary or anything other than routine. Furthermore, there is no evidence that Petitioner made any effort to file his federal petition, or even determine when the federal limitations period began to run, during the first nine months of the limitations period (from May 16, 2002, the date his conviction became final, to February 15, 2003, when he sought information regarding his post-conviction remedies from the institutional law library). And there is no evidence that Petitioner made any independent effort to file his federal petition between February 15 and the May 16, 2003 deadline. Therefore, Petitioner has failed to demonstrate that his transfer to another institution on May 5, 2003, just eleven (11) days prior to the federal filing deadline, entitles him to equitable tolling. Finally, to the extent Petitioner suggests that Inmate Russell's negligent legal services entitle him to equitable tolling, such negligence does not constitute grounds for equitable tolling. *See* Helton, 259 F.3d at 1313–14 (negligent legal assistance is not a basis for equitable tolling, and record evidence was insufficient to support a connection between Helton's untimely filing and any alleged inadequacies in the prison library in light of Helton's failure to state any independent efforts he made to determine when the relevant limitations period began to run, let alone that his correctional institution somehow thwarted his efforts); *see also* Paulcin v. McDonough, 259 Fed. Appx. 211, 213 (11th Cir. 2007) (transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances, additionally, petitioner failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding; therefore, equitable tolling of limitations period was not warranted); Bell v. Sec'y, Dept. of Corrections, 248 Fed. Appx. 101, 104–05 (11th Cir. 2007) (prisoner did not show diligence because there was no evidence that prisoner attempted to access the prison library or determine the applicable limitations period until after it expired); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (neither inmate's ignorance of the law, nor inadequacy of services of inmate law clerk who helped draft habeas petition, nor fact that prison law library was closed for 15 days entitled petitioner to equitable tolling of limitations period); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims. . . . It is not enough to say that the Minnesota facility lacked all relevant statutes and case law or that the procedure to request specific material was inadequate.").

Petitioner also attempts to overcome the time bar by contending he is "actually innocent" of the burglary charge in Walton County case number 02CF000118, and his trial counsel unconstitutionally induced him to enter a plea to the remaining charges, thus the one-year limitations period set forth in section 2244(d) violates the Suspension Clause of the Constitution (Doc. 14 at 15–20). The Eleventh Circuit has held that where the federal limitations period has expired, and the

z
a

petitioner is claiming actual innocence, the court must first consider whether the petitioner can show actual innocence before it addresses the issue of whether an exception to the limitation period is required by the Suspension Clause of the United States Constitution. *See* Wyzykowski v. Department of Corr., 226 F.3d 1213, 1218 (11th Cir. 2000). In Wyzykowski, the Eleventh Circuit left open the question of whether the § 2244 limitation period constituted an unconstitutional suspension of the writ because the court found the record inadequate for review of the actual innocence claim. *Id.* at 1218–19; *see also* Arthur v. Allen, 452 F.3d 1234, 1244, *modified on reh'g*, 459 F.3d 1234 (11th Cir. 2006) ("where the § 2244(d)(1) limitation period has expired and the petitioner is claiming actual innocence, we must first consider whether the petitioner can show actual innocence before we address whether an exception to the limitation period is required by the Suspension Clause"); Sibley v. Culliver, 377 F.3d 1196, 1205 (11th Cir. 2004) ("Following Wyzykowski," the Eleventh Circuit declined to reach the merits of whether the Suspension Clause requires an exception to the § 2244 limitations period because the petitioner failed to make a sufficient showing of actual innocence).

In Schlup v. Delo, 513 U.S. 298, 324, 326–27 (1995), the Supreme Court set forth the standard of proof governing a habeas petitioner's procedural claim of actual innocence: the petitioner must show that constitutional error "probably resulted" in the conviction of one who is actually innocent. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

The Schlup Court went on to make several observations about this standard. With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 330 (emphasis added). With respect to the term "reasonable juror," the Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*, 513 U.S. at 329.

Additionally, it is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. *See* Bousley v. United States, 523 U.S. 614, 623–24, 118

S. Ct. 1604, 1611–12, 140 L. Ed. 2d 828 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19, 120 L. Ed. 2d 269 (1992)). "[T]he district court should heed the Supreme Court's instruction that "[i]n cases where the State had forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." United States v. Montano, 398 F.3d 1276, 1285 (11th Cir. 2005) (quoting Bousley, 523 U.S. at 624).

In assessing the adequacy of the petitioner's showing, the district court "is not bound by the rules of admissibility that would govern at trial." Schlup, 513 U.S. at 329. Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.*, 513 U.S. at 328 (quoting Friendly, Is Innocence Irrelevant?  Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)).  The Court also observed that when considering an actual innocence claim in the context of a request for an evidentiary hearing,

> the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial.  Obviously, the court is not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment.  Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.

Schlup, 513 U.S. at 331–32.

In the instant case, Petitioner states he is innocent of the charge of burglary of a dwelling in case number 02CF000118 because "Ms. Sheen," presumably the owner of the dwelling, invited him into the home, there were no signs of forced entry or burglary tools, and Petitioner's fingerprint was on the stove knob because he cooked for her (Doc. 14 at 34).  Petitioner states that although he advised his counsel of this "viable cooking defense," counsel advised him to plead guilty to the charge for the purpose of mitigating his sentence (*id.*).  Petitioner does not allege that the facts underlying the "cooking defense" were unknown to him at the time of his plea; indeed, his allegations suggest that both he and counsel were aware of these facts.  Therefore, Petitioner has failed to present new evidence to support his actual innocence claim.  In light of Petitioner's failure to make a sufficient showing of actual innocence, the undersigned declines to reach the merits of whether the Suspension Clause requires an exception to the § 2244 limitations period.

Finally, Petitioner's contention that he is entitled to proceed under 28 U.S.C. § 2241 instead of § 2254 (*see* Doc. 14 at 20–21) is without merit.  Although Petitioner may properly file his habeas petition under § 2241, his petition is subject to the rules and restrictions set forth in § 2254 because he is imprisoned pursuant to a state court judgment.  Peoples v. Chatman, 393 F.3d 1352, 1353 (11th

Cir. 2004) (citation omitted). Therefore, he may not avoid the time limitations of § 2254 by proceeding under § 2241.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (Doc. 20) be **GRANTED**.

2. That the amended petition for writ of habeas corpus (Doc. 13) be **DISMISSED** with prejudice as untimely.

At Pensacola, Florida, this 8th day of January 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**